UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v. : | Crim. No. 18-0359 (JDB) |
| : | |
| THOMAS KENNEDY MCCORMICK, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes the defendant's Motion to Suppress evidence and its request for a Franks hearing filed June 3, 2019.  The motion to suppress should be summarily denied, as it is not meritorious, and is not supported by fact or law.  At a minimum, the factual hearing on the motion to suppress can be accomplished by the Government calling a single witness, Special Agent David Hitchcock, to first introduce the search warrant and the affidavit[1] (See Exhibits 1 and 2 attached) into the court record, and second, explaining that this is the warrant that was served on December 5, 2013.  No further testimony is warranted and no further testimony is required by law. The Government submits the following in support of this opposition.

Statement of Investigative Chronology

Although the search warrant affidavit (Exhibit 2) provides some chronology of the

---

[1] Attached to this opposition is the signed search warrant and attachments and return for the warrant at issue. According to the file stamps from the clerk's office, it was issued by Magistrate Judge Neiman in the U.S. District Court for Massachusetts December 4, 2013. Exhibit 1.  Attached is the signed affidavit for the warrant, Exhibit 2. These documents were in fact supplied to the defense in discovery on January 4, 2019, although their footnote 2 (Motion to Suppress, page 3) complains that they only received an MS Word version, unsigned, which they attached to their motion to suppress.  Attached as Exhibit 3 is a notice of discovery letter sent on January 4, 2019, with two DVDs enclosed along with a detailed list of the contents of each DVD.

1

investigation of the defendant, Thomas Kennedy McCormick, as the real world identity of a Darkode conspirator who used the moniker "fubar", among various other email monikers, the Government submits an investigative chronology that is more expansive so that the court may put in chronological context various other events alleged in the indictment and mentioned by the defense in the motion to suppress.  In any event, for purposes of addressing the motion to suppress evidence, there is no need for the court to consider facts other than those asserted in the four corners of the search warrant affidavit.

Although the search warrant affidavit (Exhibit 2) provides some chronology of the investigation of the defendant Thomas Kennedy McCormick as the real world identity of a Darkode conspirator who used the moniker Fubar, among various other email monikers, the Government submits an investigative chronology that is more expansive so that the court may put in context various other events alleged in the indictment and/or mentioned by the defense in the motion to suppress.  This chronology does not seek to supplement the facts asserted in the search warrant affidavit that is the subject of litigation.   In any event, for purposes of addressing the motion to suppress evidence, there is no need for the court to consider facts other than those asserted in the four corners of the search warrant affidavit or those alleged by the defense who seek to declare the search warrant invalid.

The Federal Bureau of Investigation first began a criminal investigation of an internet website known as the Darkode.com around 2008.  It appears that the investigation actually began with the FBI in Hawaii and involved a confidential human source who provided information to the FBI about its existence.  According to existing records, the FBI investigation began shortly after the Darkode first appeared on the internet which was around 2008.

2

In sum, the FBI learned that the Darkode was an exclusive, international, online forum and marketplace for criminals to develop and share hacking tools and schemes, known as the Darkode. Darkode's membership was by invitation only, which made it more difficult but not impossible for the FBI to infiltrate. Through the use of confidential human sources and FBI agents posing as computer hackers, the FBI soon learned that the Darkode users/members were primarily interested in the use, sale, and deployment of malware for the purpose of generating revenue. In order to preserve anonymity, and primarily to evade detection by law enforcement, members primarily interacted online using anonymous aliases, encrypted email and internet chat relay programs, and favored the use of then existing internet money processors.

The impact of the Darkode and the malware its members created, generated and sold soon had an international criminal impact. Its membership was international and early efforts by FBI in coordination with various international law enforcement officials, resulted in the arrests of certain leaders of the Darkode in Spain and in Slovenia. Some nations declined to extradite Darkode defendants arrested in their country because their foreign laws prohibited extradition of its citizens, or because some nations elected to use evidence presented to them by the FBI and other foreign police departments to conduct their own prosecutions.

Meanwhile, FBI investigators proceeded with the investigation of the Darkode forum and its members, including those who continued to participate and join even after arrests of their colleagues had become public knowledge. Investigators learned early on that a Darkode member using the moniker Fubar, was an active participant in the Darkode and in fact, later rose to become an administrator—that is a leader of the forum. Law enforcement sought and obtained a number of search warrants and orders under the Electronic Communications Privacy Act which helped the

link the numerous email monikers used by McCormick to the real world identify of the defendant Thomas Kennedy McCormick.  In the course of this investigative effort, FBI agents investigating another banking fraud malware scheme (Operation Spy Eye), accumulated information for the investigation, corroborated by accomplice information that the Darkode administrator using the moniker Fubar, was Thomas Kennedy McCormick of Cambridge, Massachusetts.  This realization was sent by an agent in Atlanta, Georgia to Special Agent Hitchcock by email on January 28, 2011 and had a Massachusetts drivers license and photo attached.   Fubar was believed to be McCormick.  Previous efforts to identify the defendant by FBI Boston surveillance teams proved unfruitful and public record databases did not show the defendant living at the address in Cambridge under surveillance (probably because he had no credit card history in his own name and did not at the time even have a driver's license.)  The DMV record showed a birth date of 10-15-1992, which would have made his 18 years old in October of 2010.  In fact, he had not gotten a driver's license until 18, although he could have so obtained a license at age 16.  In any event, the revelation of McCormick as the  probable real world identity of Fubar did not conclude the investigation as there were numerous other email monikers that had yet to be linked to McCormick at his Cambridge address or at any other address for that matter.  (See Ex. 2, paragraph 5 and paragraphs 17-18).

Despite public revelations of the arrests of leaders in the Darkode, the website continued and more members were added even though certain of its administrators had been arrested.  In 2015, the U.S. Department of Justice in conjunction with the U.S. Attorneys Office in the Western District of Pennsylvania, announced the arrest of another large segment of Darkode members and leaders (called administrators).  Some arrests and prosecutions were done covertly in order to

recruit the cooperation of members and administrators in pursuit of still other criminal associates of the Darkode. The defendant was one such Darkode participant who benefited from such law enforcement action in hopes of keeping certain enforcement actions from public.

On December 5, 2013, the FBI executed a search warrant on the defendant McCormick's college dorm room at the University of Massachusetts at Amherst. Although law enforcement seized incriminating digital evidence and computer devices from the defendant he was not arrested.

During the search warrant at Amherst, the defendant consented to a voluntary interview with the FBI, which was conducted by Special Agent David Hitchcock (also the affiant on the search warrant served at the same time). The defendant asked if he were under arrest and was told that he was not under arrest and that he did not have to answer questions. He however, elected to answer questions from the FBI about who he was, what the Darkode was, and what his role was in the Darkode forum. He sat in an FBI car during the interview –which lasted about 2 and ½ hours and ended the interview on his own accord, explaining that he had to leave to take a final exam.

Thereafter, the defendant retained counsel, and with the assistance of counsel, he signed debriefing letter. The terms of the letter allowed the defendant to proffer information to law enforcement so that they could determine whether or not an agreement to plead guilty and cooperate with law enforcement about the criminal activity of others had the chance to lead to a substantial assistance departure under 18 U.S.C. § 3553(e) and/or the U.S. Sentencing Guidelines. He debriefed extensively with law enforcement and prosecutors, travelling at his own expense from the state of Washington. Those debriefings were on: August 4, 5, and 6, 2014, May 31, 2014, November 29 and 30, 2016, and September 25, 2017. There was a hiatus of almost a year from

the end of 2016 until September 2017 because the lead prosecutor suffered a stroke. When it became apparent that the prosecutor would not be able to return to duty, another prosecutor was assigned. On December 7, 2017, he met with prosecutors in an effort to finalize a plea agreement as the offer had been outstanding. He stated that he accepted the offer but wanted to discuss it over the holidays with his parents. He signed a document tolling the running of the statute of limitations for 92 days to demonstrate good faith in pursuing the plea. Ultimately, in the Spring of 2018 he through his attorneys, presented a counter-offer which the Government rejected, then eventually rejected the plea offer altogether. On December 4, 2018, the grand jury returned an indictment against the defendant along with three other Darkode co-defendants who were located in Spain and Slovenia.

<u>Facts in Support of the Opposition to the Motion to Suppress</u>

On December 4, 2013, Magistrate Judge Neiman of the U.S. District Court for the District of Massachusetts issued a search warrant to the FBI to search the dorm room of Thomas Kennedy McCormick at the University of Massachusetts at Amherst. See Exhibit 1. According to the search warrant return, the warrant was executed on December 5, 2013, and according to the itemized inventory on the return, a number of digital devices were seized. Exhibit 2 is the application for the search warrant and the accompanying affidavit on file in the District Court for Massachusetts. The Government proffers no additional facts outside the four corners of the affidavit.

<u>Legal Analysis</u>

<u>a.  Suppression of Evidence is not Appropriate when Law Enforcement Executes a Duly Authorized Search Warrant.</u>

The outcome of this motion to suppress is controlled by the decision in <u>United States v. Leon</u>, 468 U.S. 897 (1984). The decision in <u>Leon</u> created the good faith exception to the

6

exclusionary rule which states that when police obtain evidence pursuant to a lawfully executed search warrant they believed to be valid and lawful, it does not further the purposes of the exclusionary rule (that is, to deter police misconduct), for reviewing courts to contemplate whether or not they would have disagreed with the magistrate's finding of probable cause. Id. at 905. In such instances, it is unnecessary to reconsider probable cause determinations because the good faith exception to the exclusionary rule applies. Id. at 924-25. After Leon, reviewing courts no longer engage in an intellectual debate as to whether they would have found probable cause on the facts presented to the magistrate. Nevertheless, defense counsel urges this Court to do just that: reconsider the probable cause determination. Unless the defense is able to identify or articulate a constitutional defect, this Court need not reconsider the probable cause finding already made and should deny the motion to suppress on the basis of the good faith exception to the exclusionary rule articulated in Leon.

      The good faith exception in Leon does not apply in cases where law enforcement officials have no objectively reasonable basis for believing that the warrant is valid. Id. at 922-23. The Supreme Court identified five examples where law enforcement reliance upon a search warrant is not objectively reasonable. The defense's motion to suppress argues only two such factors are present: 1) when a magistrate issues a warrant on deliberately or recklessly false assertions contained in the affidavit; or 2) when a warrant is based on an affidavit that is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Id. at 923.[2]

---

2  The other three situations in which Leon's good faith exception would not apply are: when the magistrate fails to act in a neutral and detached manner, a warrant is so facially deficient that no reasonable officer could believe it to be valid, and police recklessly enter information into a warrant database to enable future arrests. This latter factor arose in U.S. v. Herring, 559 U.S. 135, 145-46 (2009). None of these latter three factors are alleged, and indeed, none apply, so they are not discussed in this opposition.

7

Neither factual argument made by the defense meets the minimum threshold to trigger a factual hearing, nor does either argument warrant the extreme remedy of exclusion of evidence.

The allegation of intentionally false or omitted information asserted by the defense is that the affidavit intentionally omitted necessary information about when the FBI discovered the real world identity of the defendant, McCormick, as "fubar." "fubar" was one of the monikers the defendant used on the Darkode forum. The second ground, staleness, they claim undermines probable cause. They argue that the legal inference that the facts asserted in the affidavit supporting the belief that the defendant was still in possession of incriminating digital computer evidence was stale and therefore they disagree with the magistrate's finding of probable cause. Neither argument is factually correct and in any event, the legal authority cited by the defense in reliance upon suppression is contrary to the dictates of applicable Supreme Court decisions.

### b.  The Defense's Allegation of a Deliberate Omission of the Determination of McCormick's Real World Identity Fails to Trigger a Hearing Under Franks v. Delaware.

The defense may be entitled to a factual hearing if they are able to establish that the affiant recklessly or intentionally omitted a fact from the affidavit which would have been material to establishment of probable cause. Franks v. Delaware, 438 U.S. 154 (1978). In hopes of invoking a Franks hearing, the defense claims that the affiant omitted information from another FBI investigation which suggested that the person who was an administrator of the Darkode forum using the moniker "fubar," was the defendant, Thomas Kennedy McCormick of Cambridge, Massachusetts. They claim that this fact was known to the FBI in January 28, 2011, and its omission entitles them to a hearing. It does not because it was not material and its inclusion would not have altered a finding of probable cause.

A defendant who hopes to acquire such a hearing must make a substantial preliminary

showing that the affiant's statement was deliberately false or demonstrated reckless disregard for the truth. Id. at 155-56. The defense burden is to establish this allegation by a preponderance of evidence. In order to "obtain a Franks hearing [the defendant] must show that (1) the affidavit contained false statements or omitted certain facts; (2) the false statements or omitted facts were material to the finding of probable cause; and (3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard for the truth, to mislead the magistrate." United States v. Ali, 870 F. Supp. 2d 10, at 27, (D.D.C. 2012) (citing Franks v. Delaware, 438 U.S. 154 (1978)). Intentionally omitted facts are only material if "the affidavit . . . supplemented by the omission[ ] would not be sufficient to support a finding of probable cause." Ali, 870 F. Supp. 2d at 27 (quoting United States v. McNeese, 901 F.2d 585, 596 (7th Cir. 1990)). For example, in United States v. Matthews, 753 F.3d 1321, 1326 (D.C. Cir. 2014), no hearing was required because there was no substantial showing that the affiant's testimony was intentionally or recklessly false.

The defense alleged that Special Agent Hitchcock, the affiant, intentionally misled the reviewing magistrate because he did not include a reference to the correspondence from January 28, 2011 where FBI agents initially connected the defendant with the "fubar" alias. They argue that if that fact were included, it would have defeated probable cause, (Defendant's Motion to Suppress, p. 12), as the magistrate would have found the evidence in Hitchcock's affidavit stale, and would not have signed the search warrant. (Defendant's Motion to Suppress, p. 14).

This argument fails factually because the omission of the January 2011 conclusion from another agent that "fubar" was Thomas Kennedy McCormick of Cambridge, Massachusetts, was not material to the goal sought in the search warrant and could not have effected probable cause for this search warrant. The objective of the search warrant was to seize digital evidence that

9

would link McCormick to the Darkode conspiracy and that such evidence was likely in the possession of McCormick at Amherst. It was not sufficient for the FBI to merely ascertain the real world identity of "fubar" as McCormick. The revelation would have been significant to include in an affidavit if Special Agent Hitchcock was seeking an arrest warrant. Instead, the FBI were searching for digital evidence that would link McCormick to the various aliases he used and ultimately, to the Darkode forum. This warrant's objective was to demonstrate that McCormick, wherever he was at the time of the execution of the warrant, was likely in possession of evidence of a crime (here digital evidence in the form of computers and digital storage devices).

Consequently, the search warrant affidavit explained that McCormick had used a multitude of aliases, here colloquially referred to as email monikers, and that "fubar" was just one of the aliases used. Pages 10-12 of the affidavit provide the factual basis that links all the email monikers to McCormick, who is the same McCormick who was a resident of the University of Massachusetts at Amherst living at 231 Baker Hall, a dormitory. The January 28, 2011 email that links Massachusetts motor vehicle records to McCormick, an address in Cambridge, Massachusetts (presumably McCormick's home) which facilitated additional link to an IP address, was just one of many factors needed to show probable cause that McCormick was in possession of incriminating digital evidence at Amherst in December, 2013. Determination of his real world identity did not end this inquiry, even if it was a significant revelation in the investigation.

The FBI investigative trail articulated in the affidavit p.4, paragraph 5, linked McCormick to the "fubar" alias, as well as botnet.biz, root@botnet.biz, tkmccormick@gmail.com, a Cambridge telephone number, and another email address of infestedtom@gmail.com, not.a.russian.spammer@gmail.com, and after January 2011, a Cambridge permanent address at 10

10

Sibley Court, along with an IP address of a computer located there. The overall investigative effort was not to arrest McCormick, but to locate digital evidence likely to be in his possession if the FBI were to find his current location. They did ascertain his current location in December 2013 in Amherst. Linking McCormick to a home address at Cambridge was just one step in an intricate investigation involving a number of deductive steps. Those steps of deductive reasoning also sought to link McCormick to a great variety of email monikers, locations, and IP addresses, a timeline that spanned a lengthy investigation, and ultimately to a physical location at a precise time, which turned out to be a dorm room at U. Mass. Amherst on December 5, 2013.

Consequently, the absence of the mention of "Fubar=McCormick" revelation of January 2011 in the search warrant affidavit did not negate the probable cause needed for the evidence the FBI was seeking to find. Its omission did not and could not have altered a probable cause determination that McCormick and the evidence sought were at Amherst, not Cambridge. It was not the end of the investigation to link the real world identity of McCormick to "fubar" as the defense Motion to Suppress wrongly implies. The key evidence in this investigation, as in most cyber investigations, does not end with the revelation of the real world identity of a computer hacker's email moniker. It ends, if it ends at all, with the recovery of digital evidence found in the possession of the computer hacker and that usually occurs long after the hacker's real world identity is known. When all of a target's email monikers are linked to digital computer and storage devices and those are all found in the possession of the person whose real world identity has been established, then the investigation nears conclusion.

The recovery of the digital evidence is usually more important in the evidentiary trail because its recovery lessens the likelihood that the targeted computer hacker will be able to

11

credibly claim that some other person used all the email monikers. Such allegations lack credulity when those monikers and digital evidence are found in the physical possession of the targeted computer hacker. In this context, however, omission of the revelation on January 28, 2011, did not affect the finding of the specific probable cause sought in the affidavit, nor did it inject staleness to infect the magistrate's finding. The defense erroneously places importance on locating McCormick's permanent address in Cambridge. The revelation of McCormick as "fubar," with a permanent home address in Cambridge, did not tell agents where they expected to find the defendant and his digital evidence.

Further, the inclusion of Darkode log-ins referred to in paragraph "c" page 11 and on page 8 of the affidavit, was significant to link an IP address to botnet.biz and another back up email address of not.a.russion.spammer@gmail.com all to McCormick, between October 3, 2012 and January 30, 2013. Evidence of the Darkode forum log-ins shows that the target of the investigation was still active on the Darkode forum. The affidavit notes twenty-eight separate occasions of use of a particular IP address. The affidavit does not mention that agents had in their possession Darkode log-ins that show McCormick logged in as administrator of the Darkode from October 2012 through September 10, 2013, a total of 631 times. This is not an example of intentional deceit. In those 631 instances, the defendant used a multitude of email monikers, including "fubar," just prior to the seizure warrant executed on December 5, 2013. This is not a material omission, as the affidavit sought to show probable cause that McCormick was in possession of incriminating digital evidence at Amherst, not just that "fubar" was in fact McCormick or that McCormick had logged in as an administrator of the Darkode 631 times between October 2012 and September 10, 2013. The affiant sought to include information relevant to the determination of probable cause as to the

12

digital devices and sought to show that in selected twenty-eight instances, the "fubar" administrator account had been linked to the same IP address, the domain name botnet.biz, which in turn was linked to a phone number, an address and another email address, not.a.russian.spammer@gmail.com.  The factual scenario was important to show the link to the digital evidence for which they were searching and their hope to find it in possession of the defendant, where he was currently located.  Examination of the Darkode log-ins through September 10, 2013, mitigates any notion of staleness, and shows McCormick, as "fubar," continuing to participate in the Darkode forum at least two months before execution of the search warrant at Amherst.  The affiant selected specific information relevant to establish probable cause to seize particular items of digital and computer evidence.[3]

Ultimately, the defense has failed to make an adequate showing that entitles them to a hearing contesting the warrant, and are not legally entitled to a Franks hearing. A hearing should not be granted despite an assertion of deliberate or reckless disregard for the truth if the defendant does not make a substantial preliminary showing that the challenged statement or omission was essential to the magistrate's finding of probable cause.  Franks, supra, 438 U.S. at 155-156, 171-72; see also, United States v. Becton, 601 F.3d 588, 597-98 (D.C. Cir. 2010) (holding that no hearing was required even though officers omitted information from the affidavit about the credibility of witnesses because probable cause existed based on other evidence).

    c.  The Allegation of Staleness Is Not an Appropriate Criticism of the Warrant and Does Not Undermine the Finding of Probable Cause.

---

3 The court can expect however, that at trial, the Government will seek to introduce evidence that during that time period McCormick logged in to the Darkode as an administrator 631 times using a multitude of email monikers, including "fubar," because such evidence shows his role in the conspiracy and in the Darkode Enterprise. That evidence will be relevant and material at trial, where his identity is at issue.  Its omission in the search warrant affidavit does not signal an intent to deliberately falsify or mislead. Those log-ins were omitted from the affidavit because they were not necessarily material to the investigative goal in the search warrant affidavit -- recovery of digital evidence.

13

The defense challenges the finding of probable cause by arguing that this Court should find that the information in the affidavit was old, and therefore stale. They urge this Court to review the probable cause finding made by the magistrate in Massachusetts as an indicia of probable cause so fatally defective that no reasonable officer could believe the warrant was valid. This type of allegation is a second basis from Leon argued by the defense in hopes of setting aside the search warrant. Leon, 468 U.S. at 923. Staleness asserted as a defect in the warrant is at most debatable and is not the type of alleged defect, even if shown, that makes a probable cause finding unreasonable. The factual assertion of staleness is wrong and reliance upon staleness as an appropriate basis for legal review is similarly wrong.

Even accepting that staleness is an appropriate basis to prompt a review, (and the Government does not accept staleness as an appropriate legal standard here) the defense is hard pressed to say that the issuing magistrate was wrong to find probable cause to issue the warrant. This is because staleness, if it is an appropriate doctrine to apply here, is not such a defect that is obvious and so lacking in indicia of reliability to make reliance upon a warrant unreasonable. The defense must show that not only was the magistrate wrong, but that it was unreasonable for a law enforcement officer to rely upon such a warrant as valid. That is an extreme position and one difficult to prove with an allegation of staleness.

The defense cites United States v. Webb, 255 F.3d 890 (D.C. Cir. 2001) in support of the staleness argument. Reliance upon that case however, is not helpful to their cause. Webb emphasizes that the "unreasonable standard" is very high due to the high degree of deference given to a magistrate's determination of probable cause. Webb, 255 F.3d at 905. See also, Ali, 870 F. Supp. 2d at 25. Judge Garland, writing for the majority, upheld the finding of probable

14

cause in that case, albeit he found it "troubling." Webb, 255 F.3d at 904. The Webb case examined a 109 day delay between a final drug transaction and the issuance of the warrant. Had the Webb case been an instance involving only a single drug transaction, the appellate decision to affirm might have been different. Instead, Judge Garland observed that "courts have been considerably more lenient in assessing the currency of information supporting probable cause in the context of extended conspiracies than in the context of single-incident crimes." Id. at 905.

In the final analysis, Webb supports the Government's position on staleness and not the defense's argument, since the affidavit states that the crime under investigation is a continuing offense and not a single incident crime. It is obvious from the affidavit, that the FBI was investigating a series of computer intrusions involving fraud and financial crimes spanning several years that focused upon the defendant's activity from December 14, 2009 (affidavit paragraph 11, page 8, Exhibit 2) through the Fall of 2013. This warrant was not based upon a single incident crime, or a single incident of computer intrusion, which clearly distinguishes it from Webb.

Moreover, the defense's reliance on Webb is misplaced because it has misinterpreted the actual decision. The defense's Motion claims: "the D.C. Circuit affirmed a trial court's finding that information in a search warrant was stale when there was 109 days from finding of the evidence to application for the search warrant." (Defense Motion to Suppress, page 8, last paragraph). In reality, the appellate court affirmed the district court's denial of the motion to suppress, Webb, 255 F.3d at 904, and did so despite a 109 day delay.

The defense relies upon another case in support of its effort to invoke the staleness doctrine. Their reliance upon Schoeneman v. United States, 31 F.2d 173 (D.C. Cir. 1963) is entirely misplaced. (defense Motion to Suppress, page 8). Although the decision did find fault in a search

15

warrant that had 107 days of delay between the crime under investigation (illegal possession of classified documents) and the issuance of the warrant, the appellate decision to grant suppression of the evidence (reversing the trial court which did not grant suppression), was based upon the uncorroborated hearsay evidence of a single incident crime from an informant who had no history of reliability explained in the affidavit. Schoeneman, 317 F.2d at 178. The lapse of 107 days between the possession and the issuance of the warrant was actually incidental to the appellate court's decision. The uncorroborated informant assertions, and not staleness, was the operative reason for reversal. In any event, reliance upon the decision in Schoeneman now, even if staleness were an outcome determinative factor, is highly questionable, because the Schoeneman decision was rendered twenty years before the Supreme Court's decision in United States v. Leon, 468 U.S. 897 (1984). The appellate court in the Schoeneman decision engaged in the exact same appellate-court-second-guessing about probable cause that Leon was intent upon ending.

In fact, assertions of staleness under Schoeneman would not have rendered that warrant as unreasonable and lacking in indicia of probable cause if the circuit court had applied the dictates of the Leon decision back in 1963. The defense simply cannot argue seriously that the affidavit here was so lacking in evidence to substantiate probable cause that no reasonable officer would have relied upon it. That however, is their burden of proof. Objections about staleness do not undermine the probable cause finding here enough to trigger the kind of exception that Leon intended when it directed reviewing courts to give deference to the magistrate's probable cause determination.

Additionally, it is unlikely that the staleness doctrine articulated in drug cases has much utility in the world of investigating computer crimes. The application of the staleness doctrine has

16

diminished utility in the context of seizure of digital evidence, and for this reason, the defense's reliance upon staleness as a reason to attack probable cause is misplaced. Recovery of digital evidence cannot be equated with recovery of evidence, like drugs, which are transitory in nature and transitory in the practice of drugs dealers and possession. Documentary evidence is similarly different when the staleness doctrine is applied. Staleness is even less of a concern when records or documents are digital, because digital files remain on computers for extensive periods of time. Ali, 870 F. Supp. 2d at 34 (internal citations omitted); *see also* United States v. Payne, 394 F. App'x 891, 894 (3d Cir. 2010) (unpublished) (quoting United States v. Payne, 519 F. Supp. 2d 466, 477 (D.N.J. 2007)); *see also* United States v. Flores, 802 F.3d 1028, 1043 (9th Cir. 2015). The decision in United States v. Seiver, 692 F.3d 774, 777 (7th Cir. 2012), highlights that staleness is a relevant inquiry for the legality of a search for perishable or consumable items, like cocaine, but it is rarely relevant when it comes to computer files because computers and computer equipment are "not the type of evidence that rapidly dissipates or degrades." Id*. (*quoting United States v. Vosburgh, 602 F.3d 512, 529 (3d Cir. 2010) (internal quotation marks omitted)). Even if the defendant had attempted to delete his files (which he does not claim), "even persons with minimal technological savvy are aware that data is frequently preserved and recovered after deletion from an electronic device." Flores, 802 F.3d at 1044. Consequently, a probable cause review focused on staleness as illustrated in drug case search warrants has little applicability or relevance in the context of searches for digital devices and computers.

Further, the issue of staleness was actually addressed in the search warrant affidavit, although the doctrine of staleness was not invoked in so many words. Special Agent Hitchcock noted that from his experience and training he "know[s] that in order for individuals to

communicate with criminal forums and co-conspirators online, and to commit crimes online, they must use a computer." Paragraph 23 of Exhibit 2. He was also "aware that individuals frequently use computers to create and store records of their actions . . . [and that] computer files or remnants of such files can be recovered months or even years after they have been written, downloaded, saved, deleted, or viewed locally over the internet." Paragraphs 25-26, Exhibit 2.

Thus, the magistrate had the opportunity to consider the impact of staleness before issuing the warrant, yet ultimately found probable cause existed to issue the warrant. There is legal support in favor of the magistrate's decision to issue the warrant to seize digital and computer evidence. This Court has held previously that staleness is less of an issue when the warrant targets documentary information, such as business records, because these types of records are typically maintained over long periods of time. Ali, 870 F. Supp. 2d at 33-34 (citing United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988)); *see also* Andresen v. Maryland, 427 U.S. 463, 478 n.9 (1976). Consequently, the issue of staleness is not nearly as concerning in a search warrant intent upon recovery of digital and computer evidence. This kind of evidence is generated in an ongoing crime, not a single instance event, and the affidavit details evidence that McCormick continued to participate in Darkode activities, particularly by logging in to the Darkode as an administrator through September, 2013, only two months and 5 days before the execution of the search warrant seeking digital and computer evidence believed to be in his possession at Amherst. These facts do not support the defense's argument that the issuance of the search warrant was so lacking in probable cause due to staleness, that is should now be ruled invalid.


WHEREFORE, the Government respectfully moves the Court to deny the Motion to Suppress Evidence.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

Peter V. Roman
Assistant United States Attorney
D.C. Bar Number 984996
Telephone: (202) 252-7115
Email: Peter.Roman@usdoj.gov

By: _____/s/_____
John P. Dominguez
Assistant United States Attorney
D.C. Bar 959809
Cyber Section
555 4th Street, N.W., Room 4229
Washington, D.C.  20530
Office: 202-252-7684;
Fax: 202-514-8707
John.Dominguez@usdoj.gov