IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No. 18-cr-359 (JDB) |
| THOMAS KENNEDY McCORMICK, *et al.*, | : |
| Defendant. | : |

**MOTION TO DISMISS FOR PREINDICTMENT DELAY,
OR ALTERNATIVELY FOR A HEARING
ON THE ISSUE OF PREINDICTMENT DELAY**

Defendant Thomas Kennedy McCormick, by and through undersigned counsel, hereby respectfully moves this Honorable Court to dismiss the indictment pending against him, on the grounds that his 5th Amendment Due Process rights have been violated by inordinate and unjustified pre-indictment delay. Alternatively, under relevant case law described below, the defense is entitled to a hearing and discovery relating to the delays associated with this case's prosecution, initiated more than nine years ago.

I    **Introduction**

On January 5, 2010, a 17-year-old high school junior named Thomas McCormick reportedly sold malware to an FBI undercover agent through an internet platform called "Darkode." Within a year, the government determined where Mr. McCormick lived during high school as well as his subsequent residency in college, but took no overt action to arrest, confront, or simply stop McCormick from engaging in any activity connected to Darkode. That did not happen until December of 2013, six weeks after he turned 21, and almost four years after the alleged undercover purchase.

1

The decision to "lay low" for nearly four years had a significant benefit for the Darkode prosecution team—it meant that the malware transaction and any other conduct by McCormick before turning 18 on October 15, 2010, would never be treated as juvenile offenses because Thomas was now over 21 and no longer subject to juvenile court jurisdiction. By waiting to contact McCormick just six weeks after he had turned 21, the newly-revived investigation completely eliminated the juvenile court jurisdiction (under 18 USC § 5031-5042, "The Juvenile Delinquency Act," or "JDA") which could have addressed the 2010 malware purchase at any time before losing jurisdiction at Thomas' 21st birthday. A juvenile prosecution without even the possibility of transfer to adult status (18 U.S.C. § 5032) was swept into an allegation of an ongoing conspiracy, creating dramatic new leverage over McCormick.

Faced with potential federal felonies and no possibility of juvenile treatment, McCormick embarked on a cooperation journey that lasted for almost five years. When a new prosecutor took the reins of the Darkode case, Mr. McCormick was told, now in mid-2018, that he must either take a plea agreement or face indictment. The defendant rejected a plea offer that contemplated significant imprisonment. An indictment charging RICO conspiracy, conspiracy to commit bank fraud and wire fraud, and five counts of aggravated identity theft was lodged against him, one day before the statute of limitations expired.[1]

During the grand jury presentation related to that indictment, the last conversation between the case agent ("WITNESS") and a grand juror ("A JUROR") begin with a particularly telling exchange:

> JUROR:   Is there something that I'm missing that's going on?  Or –

---

[1] The Grand Jury was empaneled in May of 2018, when the defendant was 25. At the time of empanelment, his codefendants were 31, 34, and 39 years-old.

2

> WITNESS: I can address some of this. We've had some transition between individuals who are working on this investigation, be that both on the prosecutor's side, on the investigator's side. We've got multiple field offices involved in this and it was a totality of those circumstances that led us to this very late hour. But a valid question.

The witness then confirmed that last act committed in furtherance of the conspiracy was on December 5, 2013, which led to the following:

> JUROR: So does the statute of limitations expire tomorrow?
>
> WITNESS: Yes.

AUSA Dominguez then excused the agent from the room.[2]

The Grand Juror scratched the surface of a weighty question now put to this Court: when the government investigates a juvenile offender and years of inexplicable (possibly intentional) delay ensue, can the prejudice to the defendant warrant dismissal of the indictment? Under the unique circumstances of the prosecution of Thomas McCormick, the answer is yes.

II.  **Applicable Law Regarding Pre-Indictment Delay**

Historically, the only relief available to a defendant concerned with prejudicial delay was wedded to the operation of the applicable statute of limitations, as well as constitutional or statutory Speedy Trial rights. In the present case, the December, 2018 indictment was filed a day before the 2013 FBI action at University of Massachusetts would have lapsed under the applicable statute. Constitutional or statutory[3] prohibitions against delay are only triggered after the defendant is arrested, which did not happen here until post-indictment. However, in 1971 the Supreme Court established that even with the government filing initial charges within the applicable statutes of limitation, pre-accusatory delay can violate Due Process rights of a defendant. *United States v.*

---

[2] Grand Jury Transcript, December 4, 2018, at 86-88.
[3] Federal Rule of Criminal Procedure 48(b).

3

*Marion*, 404 U.S. 307 (1971). Dismissal based upon pre-indictment delay is only warranted when the delay causes "substantial prejudice" to the defense and the delay is an "intentional device to gain tactical advantage over the accused." *Id.*, at 324. The Court further explained the legal framework in *United States v. Lovasco*, 431 U.S. 783 (1977), drawing an apparent distinction between "investigative delay" and prosecutorial delay. *Id.,* at 795. Investigative delay suggests a desire by the prosecutor to factually resolve whether the case is sufficient for prosecution, and even if the delay causes prejudice to the defendant[4] the Court seemed reluctant to negate the ensuing prosecution on Due Process grounds. With prosecutorial delay, the Court maintained the narrow prong set forth in *Marion*, that the delay was undertaken solely "to gain tactical advantage over the accused.' *Lovasco*, at 795, citing *Marion,* 404 U.S. at 324.

The District of Columbia Circuit Court of Appeals addressed the pre-indictment delay issue not long after *Marion* and shortly before *Lovasco*. In *United States v. Bridgeman*, 523 F.2d 1099 (D.C.Cir. 1975), the defendants sought dismissal of an indictment brought one year after a 150-inmate uprising at the D.C. Jail. The Court accepted the Due Process framework established in *Marion*, but found that the "inevitable dimming of memories which occurs with the passage of time is insufficient to show such prejudice [for dismissal under pre-indictment delay grounds]" *Id.,* at 1112. As to the tactical advantage prong, the Court found that "the obvious reason for the delay was the magnitude and complexity of the crimes. More than 150 prisoners were in the cellblock at the time of the uprising." *Ibid.* The Court found no evidence of a deliberate prosecution tactic and that the defendants' claim failed to make a "serious allegation to that effect." *Ibid.* Factually, of course, the present case poses substantial distinctions to *Bridgeman* in wide-

---

[4] In *Lovasco*, the passage of time led to the unavailability of two material witnesses for the defendant.

4

ranging and impactful ways—the length of the delay, the deprivation of JDA applicability, and the inordinate sluggishness in moving the case forward, to name but a few.

The instant case more closely tracks the situation in *United States v. Hoo*, 825 F.2d 667 (2nd Cir. 1987).  In *Hoo*, the Second Circuit ultimately denied a pre-indictment delay claim, but, importantly, recognized that deprivation of JDA applicability could, in the right circumstances, be considered the type of prejudice sufficient to warrant dismissal.  Hoo was charged with RICO two weeks after his 21st birthday.  His last proven activity with the gang took place prior to turning 18.  At a hearing on the motion to dismiss for pre-indictment delay, the testifying AUSA explained that the most important evidence connecting Hoo to the central part of their RICO case, a murder, was not obtained until the day before Hoo's 21st birthday.  *Id.*, at 669.  The prosecutor's assertion that the government "had not sought a tactical advantage over Hoo by delaying the filing of the indictment was essentially unchallenged.  *Ibid.*  Realistically, the compressed time frame between establishing important evidence of murder (December 13), Hoo turning 21 (December 14) and indictment (December 27) nearly eliminated the ability of Hoo's attorneys to argue that the government was intending to deprive him of juvenile treatment.  And, to further cement the court's finding, the prosecutor testified that she did not even know that Hoo had turned 21 until December 19, *Ibid.*, which by itself defeats the "tactical advantage" prong of the Due Process claim.

Under *Marion*, its progeny, *Bridgeman* and *Hoo*, this Court could properly grant the motion to dismiss based on the sworn testimony of the case agent, cited above, which provides almost no explanation for years of delay by the prosecution.  But should the Court hold a hearing on this Due Process claim,[5] and that the government should present testimony for this Court to fully understand

---

[5] In *Lovasco*, the Court pointed out that "there is, unfortunately, no evidence concerning the reasons for delay in the record," *Id.,* at 796 before relying upon a stipulation from the U.S. Attorney's Office, as well as factual representations made at the trial court and appellate court level.  The hearing in *Hoo* included testimony from the Special AUSA assigned to the case.  *Hoo*, at 669, In *Bridgeman*, the basis for delay (and absence of appreciable

the basis for the innumerable delays and unusual charging decisions made in this case. While the defense believes the Court would likely need to obtain testimony from some combination of AUSA Corbin Weiss, AUSA John Dominguez, and FBI Special Agent David Hitchcock, we would respectfully suggest that final determinations as to who provides testimony cannot reasonably be decided at this point without obtaining full discovery from the prosecution on this issue of delay.

    A. <u>Deprivation of JDA Prosecution Constitutes Prejudice under the Constitution.</u>

The *Hoo* court held that avoiding the Juvenile Delinquency Act by not charging juvenile conduct until years later could establish a tactical advantage for the government. Unlike the defendant in *Hoo*, the charges placed against Mr. McCormick would not have been subject to adult transfer, so the entire sentencing scheme attendant to the JDA would have dramatically different results than conviction under the current indictment. The current indictment does not allege a crime of violence, narcotics, or other serious offenses that permit transfer to adult status[6] so any incarceration at the time, discouraged as it is under the auspices of the JDA, would have been limited and would not have exceeded his 21st birthday in any event, depending on his exact age at the time of prosecution.[7] Thus, Mr. Hoo's prosecution for a gangland murder may well have ended up transferred to adult status even if the prosecutors had somehow charged him as a juvenile. The inactivity in Thomas McCormick's investigation, however, created a much more substantial prejudice based upon complete deprivation of the JDA's applicability.

---

prejudice) was so self-evident to the Court that it is unclear whether any testimony or proffer was provided by the government. In the instant case, the issue of prosecutorial intent is sufficiently present, even in the absence of additional discovery, that this Court, at a minimum, should find that the defense has raised sufficient constitutional concerns to warrant a testimonial hearing to fully establish the factual record.

[6] 18 U.S.C. § 5032
[7] 18 U.S.C. § 5037

B.  There is Additional Prejudice from the Pre-Indictment Delay in this Case

Aside from the fundamental prejudice of stripping the JDA's applicability away from the defendant, there is traditional prejudice associated with delay as well.  While the defense has yet to fully explore potential defenses or mitigation with Mr. McCormick, we would ask to preserve the right to present testimony or other competent evidence, perhaps *in camera*, to help establish additional prejudice to Mr. McCormick from the extended delay in his case. Of note, the D.C. Circuit has interpreted the Supreme Court's opinion in *Marion* to reject the "faded memory" argument. In *Bridgeman,* the Court noted that defendants had alleged "only a general dimming of memories and loss of evidence, varieties of prejudice the *Marion* court specifically rejected as 'not in themselves enough to demonstrate that [defendants] cannot receive a fair trial.'" *Bridgeman,* 523 F.2d, 1099, at 1112.  So, broad assertions of decay to the defense without specific explanation will fail this burden rooted in the Due Process clause.  However, the government has suggested to this Court, in the indictment and in its response to the motion to suppress the search warrant, that simply logging in to Darkode establishes ongoing criminal conspiratorial activity.  Had the government done anything overt during the four years between the Zeus malware purchase and their approach to Thomas in college in late 2013, Thomas might have been able to secure and preserve chat logs that show distinctly non-criminal Darkode-related communications.  For instance, the absence of accompanying chat would illustrate instances of simply logging on and looking at the website.  Some chat logs would show topical discussions on things like a member's impoverished home town in Peru, to which Thomas would donate money.  By delaying an indictment until December of 2018, the government ensured that they would possess the maximum of leverage against a defendant who could no longer reconstruct

communications that would either mitigate his role or cut into the government's blanket assertion that contact equates to conspiracy.

While the prejudice of JDA deprivation remains the most obvious claim at this point, this Court can certainly infer that the passage of this many years between charged conduct and indictment has a powerful effect on one's ability to reconstruct conversations, decisions, and even transactions.

### C. Delay for Tactical Advantage Can Be Inferred from the Government's Actions

To date, the assigned AUSAs have responded to requests by defense counsel for documents relating to the pre-indictment delay issue by saying there is nothing additional to provide. However, it is unclear as to whether there have been diligent efforts to obtain and review communications between the original AUSA on this case and his case agents or colleagues. Any discussion relating to juvenile prosecution of Mr. McCormick would likely be extremely probative to the question of whether the government's inaction in this case was part of a concerted strategy to leverage Mr. McCormick for the benefit of the Darkode investigation. On July 5, 2019, the government provided the grand jury testimony cited above, which at least has some bearing on the issue of preindictment delay. The defense is happy to formalize its requests for information, in whatever form, within the government's possession that sheds light on its charging decisions. However, in light of the central nature of "tactical advantage" aspect of this Due Process claim, we will also seek to enlist the Court in ordering these types of disclosures to the defense. Further, in anticipation of the need for in-court testimony from assigned AUSA(s) and possibly FBI Special Agent David Hitchcock, the discovery request also includes *Jencks* material from these witnesses.

IV. **Conclusion**

By waiting to make contact with McCormick until after he had turned 21, the government's newly-revived investigation completely eliminated juvenile court jurisdiction (under 18 USC § 5031-5042) which could have addressed the alleged malware purchase at any time before losing jurisdiction at Thomas' 21st birthday in late 2013. The government's decision to delay not only rendered the JDA inapplicable, but it significantly impaired the defendant's ability to defend himself against the indictment's serious charges.

The best-case scenario for explaining years of delay would be for the government to contend that they were preoccupied with the bigger investigation into Darkode. Instead, the grand jury testimony of the FBI's case agent suggests that the case was simply lost in the shuffle, that "transition between individuals that are working on this particular investigation" somehow explains years of delay within a case touted by the USAO and FBI as a major international matter. But every step of the government's investigation was accompanied by needless delay. From surveillance requests, to the "knock and talk" at University of Massachusetts, through years of cooperation and to the actual indictment, the government took inordinately long periods of time, even if we credit the Darkode investigation with being complex and international in general. Thomas McCormick, now 26, would have to retrieve memories from his junior year in high school (from events incorrectly deemed overt acts in a RICO conspiracy) as well as from almost 60 months to the day before his indictment was handed down in order to try to defend himself. The outrageous delays and the best-case explanation by the government – that there is a "valid question" due to shuffling personnel—still trigger constitutional scrutiny to a case that spans ten years at this point. The prejudice is unmistakable, and the absence of a more compelling excuse than "we shuffled personnel," this Court should dismiss the indictment.

Dated: July 15, 2019

                Respectfully Submitted,

                */s/ James M. Trusty*
                A. Jeff Ifrah (D.C. Bar No. 456661)
                James M. Trusty (D.C. Bar No. 198359)
                Jessica A. Feil (D.C. Bar No. 1034317)
                Ifrah PLLC
                1717 Pennsylvania Avenue, NW, Suite 650
                Washington, DC  20006
                Tel: (202) 524-4140
                Fax: (202) 524-4141
                jeff@ifrahlaw.com
                jtrusty@ifrahlaw.com
                jfeil@ifrahlaw.com

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 15th day of July, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing.

              */s/ James M. Trusty*
              James M. Trusty